UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCALLOP IMAGING, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 17-cv-10092-ADB |
| v. | * | |
| | * | |
| VISION TECHNOLOGIES, INC., | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiff Scallop Imaging, LLC ("Scallop") brings this action against Defendant Vision Technologies, Inc. ("Vision"), alleging that Vision's subsidiary, Blackhawk Imaging LLC ("Blackhawk"),[1] breached multiple agreements with Scallop and that the corporate veil should be pierced to permit recovery from Vision. [ECF No. 28 ¶¶ 1–6, 54–62]. Currently before the Court is Vision's motion for summary judgment. [ECF No. 79]. Vision moves for summary judgment on two issues: first, that the Court does not have personal jurisdiction over it and second, that the Court should not allow the corporate veil to be pierced. See generally [ECF No. 80]. For the reasons set forth below, Vision's motion, [ECF No. 79], is DENIED.

---

[1] Because Blackhawk is bankrupt, the parties stipulated to its dismissal from the case. [ECF No. 86].

## I.     FACTUAL BACKGROUND

Except as otherwise noted, the following facts are undisputed.[2]  Vision is a Delaware corporation with its principal place of business in Arkansas.[3]  [ECF No. 84 at 1 ("RSMUF")]. Vision builds ruggedized camera systems and sells them to the military, military contractors, and heavy industrial corporations.  [Id. at 2].[4]  Scallop is a Massachusetts limited liability company with its principal place of business in Massachusetts.  [ECF No. 28 ¶ 7; ECF No. 55 ¶ 7 (admission)].  Scallop and Vision had a business relationship whereby Scallop re-sold Vision's products under its own name and branding.  [ECF No. 28 ¶ 17; ECF No. 55 ¶ 17 (admission)].

On March 20, 2015, Vision and Scallop executed a letter of intent regarding a potential transaction that would involve Vision purchasing Scallop's assets.  [ECF No. 83-4].  On March 26, 2015, Vision created Blackhawk to be the entity that would purchase substantially all of Scallop's assets.  [RSMUF at 2; ECF No. 28 ¶ 17; ECF No. 55 ¶ 17 (admission); ECF No. 83-5 (Delaware state certificate of formation dated March 26, 2015)].  When Vision created Blackhawk, it did not contribute any capital.  [ECF No. 83-1 at 16].  Blackhawk purchased

---

[2] The Court draws the facts primarily from Scallop's response to Vision's statement of material undisputed facts, [ECF No. 84 ("RSMUF")].  It also draws facts from Scallop's Amended Complaint, [ECF No. 28], to the extent Scallop's allegations were admitted to by Vision in its answer, [ECF No. 55].  See Pruco Life Ins. V. Wilmington Trust Co., 721 F.3d 1, 11 (1st Cir. 2013) (noting that an admission of a factual allegation is a binding judicial admission). Additionally, the Court is not limited to materials cited by the parties and may consider any materials in the record.  Fed. R. Civ. P. 56(c)(3).

[3] Vision has averred that its principal place of business is both Delaware and Arkansas. Compare [RSMUF at 1 ("Vision Tech is a Delaware corporation with a principal place of business in Delaware.")], with [id. ("Vision Tech has always had its principal place of business in Arkansas.")].  This is likely a clerical error and, in any event, the parties do not contest that Vision's principal place of business is a state *other* than Massachusetts.

[4] Vision maintains that it sells cameras only to the military and military contractors though Scallop asserts that Vision also sells cameras to heavy industrial corporations.  See [RSMUF at 2].

Scallop's assets on April 21, 2015. [ECF No. 28-2]. Vision was not a party to the asset purchase agreement or to any of the subsequent related agreements between Scallop and Blackhawk.[5] [RSMUF at 2].

Until July 2015, Blackhawk was wholly owned by Vision. [RSMUF at 2]. In July 2015, Vision transferred 75% of its interest in Blackhawk to individuals associated with Vision, retaining the remaining 25%. [Id.]. Blackhawk has seven shareholders, and Vision has more than one hundred, but there is significant overlap. [Id.]; compare [ECF No. 83-6 at 2 (listing Blackhawk's owners)], with [ECF No. 83-1 at 5 (listing Vision's owners)]. Robert Lee Thompson, Sr. ("Thompson Sr.") is Vision's President and Chairman and has run Vision throughout its existence. [ECF No. 83-1 at 5; ECF No. 89 ¶ 4 ("Thompson Aff.")]. Thompson Sr. also served as Blackhawk's initial President, and as one of two original board members, but left the company relatively quickly after it was formed. [RSMUF at 3]. The parties dispute when exactly Thompson Sr. stopped working at Blackhawk.[6] After Thompson Sr. left Blackhawk, it was run by Harvey Weiss, as CEO, and Thompson Sr.'s son,

---

[5] As part of the asset purchase agreement, Scallop loaned Blackhawk $700,000. [ECF No. 28 ¶ 18; ECF No. 55 ¶ 18 (admission)]. The $700,000 was split into two loans, one for $100,00 and one for $600,000. [ECF No. 28 ¶ 18; ECF No. 55 ¶ 18 (admission)]. Blackhawk was supposed to repay the loans on May 31, 2015 and June 30, 2015, respectively, but did not do so. [ECF No. 28 ¶ 19; ECF No. 55 ¶ 19 (admission)]. In October 2015, Scallop and Blackhawk entered into a forbearance agreement, consolidating the two outstanding loans into a new promissory note, which required Blackhawk to pay back the $700,000 (plus additional charges) in installments starting in March 2016 and continuing until June 2017. [ECF No. 28 ¶¶ 20–22; ECF No. 55 ¶¶ 20–22 (admissions)]. Subsequently, Scallop and Blackhawk entered into a settlement agreement whereby Blackhawk was obligated to make a payment of $27,500 up front and then monthly payments of $88,000. [ECF No. 28 ¶¶ 24–25; ECF No. 55 ¶¶ 24–25 (admissions)]. Other than the upfront payment, Blackhawk has not made any payments under the settlement agreement. [ECF No. 28 ¶ 27; ECF No. 55 ¶ 27 (admission)].

[6] Whereas Vision maintains that Thompson Sr. was no longer a Blackhawk employee when Blackhawk purchased Scallop's assets on April 21, 2015, Scallop maintains that he was Blackhawk's President and CEO when the purchase took place. [RSMUF at 3–4].

Robert Lee Thompson, Jr. ("Thompson Jr."), as President and COO.[7]  [Id. at 4–5].  Weiss had been a director of Vision but resigned from that position when Blackhawk purchased Scallop's assets and has not held a position at Vision since, though he is a shareholder.  [Id. at 5].  As to Thompson Jr., the parties dispute his involvement with Vision after Blackhawk was formed.[8]  [Id.].  The two companies shared office space for Blackhawk's first year and a half, but in September 2016, Blackhawk moved to its own location.  [Id. at 6; ECF No. 83-1 at 10].  While sharing office space, the companies maintained separate working areas, but it is unclear whether Blackhawk paid any rent or had a separate lease.  [RSMUF at 6; ECF No. 83-1 at 10].

## II.     PROCEDURAL BACKGROUND

On January 20, 2017, Scallop filed its complaint against Vision, Blackhawk, and various trustee banks.  [ECF No. 1].  Scallop amended its complaint on March 13, 2017.  [ECF No. 28].  Blackhawk answered the amended complaint, but Vision filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim.  [ECF No. 35].  On March 22, 2018, the Court denied Vision's motion, noting that although Scallop had met its burden at the motion to dismiss stage, Vision could renew its arguments later in the litigation.  [ECF No. 52 at 13 n.2].  On October 9, 2018, Blackhawk filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Arkansas.  See [ECF No. 72].  The Court stayed the action as to Blackhawk but permitted discovery as to Vision to continue.  [ECF No. 77].  On April 22, 2019, Vision filed the instant motion, [ECF No. 79], and on May 13, 2019, Scallop opposed, [ECF No. 83].  On September 25, 2020, the parties informed the Court that Blackhawk's bankruptcy

---

[7] Thompson Sr. and Thompson Jr. were estranged around the time that Blackhawk was formed but later reconciled.  [ECF No. 89 ¶¶ 7, 20].

[8] Vision asserts that Thompson Jr. was nominally a Vice President at Vision but provided no services and was not paid, but Scallop claims that he did provide services.  [RSMUF at 5].

4

terminated in November 2019 and stipulated to Blackhawk's dismissal from the action. [ECF No. 86].

## III.    LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and

citation omitted). That is, the nonmoving party must set forth specific, material evidence showing that there is a genuine disagreement as to some material fact. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**IV.   DISCUSSION**

Vision argues that the Court does not have general or specific personal jurisdiction over it and that Scallop has failed to adduce evidence sufficient to permit piercing the corporate veil to hold Vision liable for Blackhawk's contractual breaches. See generally [ECF No. 80]. Scallop counters that because Vision and Blackhawk were alter egos, the corporate veil should be pierced and, for that reason, the Court can exercise personal jurisdiction over Vision by virtue of the fact that it could (and did) exercise personal jurisdiction over Blackhawk. See generally [ECF No. 83].

"Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080,

6

1091 (1st Cir. 1992). "But, the 'presumption of corporate separateness [may] be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.'" Id. (alteration in original) (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980)). "Since the essence of personal jurisdiction is to bring responsible parties before the court, a corporation which is actually responsible for its subsidiary's decision to undertake instate activities should, in all fairness, be within the state courts' jurisdictional reach." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 466 (1st Cir. 1990).

In sum, if the corporate veil can be pierced, the Court can exercise personal jurisdiction over Vision so long as it could exercise personal jurisdiction over Blackhawk. See Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 371–72 (D. Mass. 2017). Because the Court has already found that Blackhawk is subject to the Court's jurisdiction, see [ECF No. 52 at 8–9 (finding that Blackhawk was subject to the Court's jurisdiction because (1) it consented to litigating in Massachusetts by virtue of contractual forum selection clauses, (2) it admitted that it was subject to the Court's jurisdiction in its answer, and (3) its conduct concerning the formation and breach of its agreements with Scallop satisfies the constitutional requirements)], the only remaining issue is whether Scallop's veil-piercing argument can withstand Vision's motion for summary judgment. Put another way, the Court must decide whether Vision has demonstrated that there is no genuine material dispute of fact and that it is entitled to a judgment as a matter of law to the effect that the corporate veil should *not* be pierced. See Fed. R. Civ. P. 56(a).

Massachusetts state law governs the veil-piercing analysis because the underlying claims for breach of contract are governed by Massachusetts law. See Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 253 (D. Mass. 2017); see also [ECF Nos. 80, 83 (parties' briefs citing only cases discussing veil-piercing under Massachusetts law)].

> In Massachusetts, the standard for piercing the corporate veil is a demanding one. Corporations are presumed to be separate and distinct entities notwithstanding relationships between them.  The corporate veil may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity. There are two scenarios in which the corporate form may be disregarded.  The first is when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the inter-corporate relationship.  The second is when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.  Courts considering whether to allow the piercing of the corporate veil consider twelve factors:
>
>> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.
>
> The factors are not formulaically added together, but rather, are considered in their totality based on the facts presented.

Medici, 239 F. Supp. 3d at 372 (internal citations and quotation marks omitted).

Vision argues that Scallop knowingly entered into a transaction with Blackhawk alone, did not bargain for a Vision guaranty, and that the Court should not rewrite Scallop's contracts with Blackhawk to add one. [ECF No. 80 at 12].  As to corporate separateness, Vision notes that (1) Thompson Sr., who ran Vision, and Thompson Jr., who ran Blackhawk with Weiss, were estranged, undercutting any notion of pervasive control, (2) "the two companies operated separately, sold separate products, had largely different officers, and did not commingle assets," and (3) Vision never used or benefitted from Blackhawk's acquisition of Scallop's assets.  [Id. at 14].

Notwithstanding Vision's arguments, Scallop has presented enough competent evidence to establish disputed material facts concerning its veil-piercing argument that will have to be

8

resolved by a factfinder rather than by summary judgment. See ATC Realty, 303 F.3d at 94. Specifically, Thompson Sr., who was Vision's Federal Rule of Civil Procedure 30(b)(6) corporate representative, testified (or, at the very least, acknowledged the existence and authenticity of documents demonstrating) that: (1) Vision and Scallop executed a letter of intent on March 20, 2015 regarding a potential transaction whereby Vision would purchase Scallop's assets, [ECF No. 83-1 at 15; ECF No. 83-4]; (2) rather than execute the transaction as initially contemplated, based on the advice of lawyers and other advisors, on March 26, 2015, Vision created Blackhawk specifically to purchase Scallop's assets because "it would be the best decision to have an acquisition company," [ECF No. 83-1 at 6; id. at 7; ECF No. 83-5 at 2]; (3) Blackhawk was Vision's wholly owned subsidiary when it was formed and when it acquired Scallop's assets, [ECF No. 83-1 at 7; RSMUF at 2]; (4) except for paying the administrative fee required to create Blackhawk as a valid legal entity, Vision, Blackhawk's sole owner at the time, did not inject Blackhawk with any capital, [ECF No. 83-1 at 7–8, 16]; (5) Blackhawk purchased Scallop's assets, [id. at 6–7]; (6) there was significant overlap in ownership, [id. at 13]; (7) Blackhawk did not pay dividends, [id. at 17–18]; (8) multiple individuals held positions at both Vision and Blackhawk (either simultaneously or in succession), including Thompson Sr., Thompson Jr., Weiss, and John Uitz, [id. at 8, 11]; and (9) for Blackhawk's first eighteen months in existence, it shared an office with Vision, [id. at 9]. Additionally, Vision has already admitted that Blackhawk borrowed more than $700,000 from Scallop and paid back only a small portion of it before eventually filing for bankruptcy. [ECF No. 28 ¶¶ 18–22, 24–25, 27; ECF No. 55 ¶¶ 18–22, 24–25, 27 (admissions)].

As such, Scallop has adduced evidence regarding at least four of the twelve factors described in Medici (common ownership, thin capitalization, no payment of dividends, and use of the corporation in promoting fraud) and suggesting that Vision and Blackhawk could be

9

viewed as alter egos (i.e., shared personnel, shared office space). Although the majority of the Medici factors may not be present here, the proper analysis is not a math equation but rather a consideration of all the factors "in their totality." 239 F. Supp. 3d at 372. As to use of Blackhawk to promote fraud, fraudulent behavior includes "maintain[ing] the subsidiary to avoid a statutory responsibility, act[ing] in a blameworthy manner, loot[ing] the subsidiary, or so undercapitalizing the subsidiary that the latter could not reasonably have been expected to meet its obligations." United Elec. Workers, 960 F.3d at 1093. Here, given that Vision provided *no* capital to Blackhawk, a factfinder could reasonably conclude that Vision did not expect Blackhawk to be able to meet its obligations.[9]

## V. CONCLUSION

In sum, there is evidence in the record suggesting that Vision wished to acquire Scallop's assets, decided to do so by creating Blackhawk—a new entity, which shared owners, officers, directors, employees, and offices with Vision—but did not adequately capitalize Blackhawk. Then the undercapitalized Blackhawk defaulted on its obligations, leaving Scallop holding the bag. From this evidence, a reasonable factfinder could conclude that the corporate veil should be pierced. Accordingly, Vision's motion, [ECF No. 79], is DENIED.

**SO ORDERED.**

December 14, 2020                           /s/ Allison D. Burroughs
                                            ALLISON D. BURROUGHS
                                            U.S. DISTRICT JUDGE

---

[9] The Court also notes that because Thompson Sr. testified that he made the decision to form Blackhawk as an acquisition vehicle based on his advisors' advice, but could not recall the substance of that advice, see [ECF No. 83-1 at 6], a factfinder could logically infer that Blackhawk was created so that Vision's owners could acquire Scallop's assets without ever having to re-pay the loan used to buy them, which would be "act[ing] in a blameworthy manner." United Elec. Workers, 960 F.3d at 1093.